UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | |
|---|---|
| **HESTER GRADNEY** | **CASE NO. 2:21-CV-01747** |
| **VERSUS** | **JUDGE JAMES D. CAIN, JR.** |
| **LIBERTY MUTUAL INSURANCE CO** | **MAGISTRATE JUDGE KAY** |

## MEMORANDUM RULING

Before the court is a Motion for Summary Judgment [doc. 11] filed by Liberty Personal Insurance Company ("Liberty"). Liberty seeks dismissal of plaintiff's claims for breach of insurance contract and bad faith on the grounds that her homeowner's policy has been voided by her alleged misrepresentations. *Id.* Plaintiff Hester Gradney opposes the motion. Doc. 13.

### I.
### BACKGROUND

This suit arises from damage inflicted by Hurricane Laura, which made landfall in Southwest Louisiana on August 27, 2020. The storm allegedly caused significant damage to the home of Hester Gradney in Lake Charles, Louisiana. Doc. 1. At all relevant times this home was insured under a policy issued by Liberty, which provides $150,400 in coverage for such damages. *See* doc. 11, att. 2. The policy also provides as follows under "Sections I & II – Conditions":

> **2. Concealment or Fraud.**
> . . . .
> (2) With respect to loss caused by a peril other than fire and with respect to all "insureds" covered under this policy, we provide no coverage for loss

> under Section I - Property Coverages if, whether before or after a loss, one or more "insureds" have
> > (a) Intentionally concealed or misrepresented any material fact or circumstance;
> > (b) Engaged in fraudulent conduct; or
> > (c) Made false statements;
> relating to this insurance.

*Id.* at 44.

Plaintiff first contacted Liberty on August 31, 2020, reporting an urgent need for her loss of use funds because she stated that she had been out of work since March due to the COVID-19 pandemic. Doc. 11, att. 2, p. 2 ¶ 5. The following day, she also reported damage to her roof, shed, and fence. *Id.* Liberty inspected the property on September 10, 2020, and determined that after application of the deductible, plaintiff was owed $13,578.98 in actual cash value for these exterior damages. *Id.* at ¶ 6. It issued payment in this amount on September 16, 2020. *Id.*

On October 12, plaintiff reported additional damage to the interior of her home, namely her floors, refrigerator, dishwasher, and garbage disposal. *Id.* at ¶ 7. She declined Liberty's request for reinspection and asked that the matter be handled virtually, due to concerns about COVID-19. *Id.* However, she never sent the photographs of the interior damage and measurements to Liberty, as she had advised she would do. *Id.* Instead, she submitted an invoice for roofing on the letterhead of Hector Guevara/HAG Roofing, LLC, on November 6, 2020. *Id.* at ¶ 8. She also submitted invoices on the company's letterhead on November 13, 2020, showing $4,000 for tarping and $862 for replacement of the dishwasher and garbage disposal. *Id.* at pp. 61–62.

Liberty contacted Guevara, who stated that he had not written the invoices submitted, that the only work he had performed at plaintiff's home was the roof installation, and that the signature on the invoices was not his. *Id.* at p. 3, ¶ 10. Liberty then contacted plaintiff, who gave evasive and conflicting answers in calls with Julie Elliott, a claims investigator, on December 1 and December 3. *Id.* at pp. 3–4, ¶¶ 11–12. In the first call, she contended that she had paid $4,000 in cash to the contractor for the tarp and that she had obtained the funds through "different sources like family, friends, and relief organizations that were in the area at the time."[1] *Id.* In the second call, however, she admitted that she had not paid the tarp invoice. *Id.* In a call with her claims resolution specialist on December 8, plaintiff admitted that she should not have submitted the invoices. *Id.* at p. 4, ¶ 13. On that date Liberty denied Gradney's claim, citing the policy's "Concealment or Fraud" provision. Doc. 11, att. 3, pp. 63–64.

Plaintiff filed suit in this court on June 21, 2021, raising claims for breach of insurance contract and bad faith. Doc. 1. She was deposed by Liberty on September 20, 2021. Doc. 11, att. 3. At the deposition she admitted that, contrary to her representations to Liberty in August 2020, she had been continuously employed at Sports Turf Specialists as an office manager for six years and was still receiving her regular salary at the time Hurricane Laura made landfall.[2] *Id.* at 9–10. She also admitted that Guevara had not prepared the invoices or tarped her roof, but that the work had instead been done for free

---

[1] According to Elliott, plaintiff refused to agree to have the call recorded. Doc. 11, att. 2, p. 3 ¶ 11.
[2] She also admitted that she had told the adjuster that gutters had blown off the house in the storm but that she was only referring to downspouts, leading to the adjuster's confusion when he could not find any evidence of gutters having been attached to the perimeter of the house. Doc. 11, att. 3, pp. 12–15.

by a church or similar group. *Id.* at 23–27. She claimed that she had submitted the invoice for tarping by accident, because it was in a stack with other documents she was supposed to submit to Liberty. *Id.* She also claimed to have no memory of telling Julie Elliott, Liberty's claims investigator, that she had paid the invoice on the tarp. *Id.* at 34–36. Finally, she contended that the tarping invoice was actually an estimate created by her boyfriend, Eric Blumfield, who worked with Guevara and lived with her at the time. *Id.* at 27–30.

Liberty also deposed Guevara on September 28, 2020. Guevara stated that he did not write any of the invoices submitted on his letterhead. Doc. 11, att. 4, pp. 19–21, 29–30. He also stated that the only work he had performed on plaintiff's property was the roof replacement, but that he had been paid $2,800 for this work rather than the $6,120 on the invoice submitted by plaintiff. *Id.* at 9, 20; *see* doc. 11, att. 3, p. 61 (roofing invoice).

Liberty now moves for summary judgment, asserting that the policy was voided by plaintiff's fraud. Plaintiff opposes the motion and maintains that (1) the policy cannot be voided without a finding of actual intent and (2) genuine issues of material fact preclude such a finding.

## II.
### SUMMARY JUDGMENT STANDARD

Under Rule 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party is initially responsible for identifying portions of pleadings and discovery that show the lack of a genuine issue of material fact. *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995). He may meet his burden by

pointing out "the absence of evidence supporting the nonmoving party's case." *Malacara v. Garber*, 353 F.3d 393, 404 (5th Cir. 2003). The non-moving party is then required to go beyond the pleadings and show that there is a genuine issue of material fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To this end he must submit "significant probative evidence" in support of his claim. *State Farm Life Ins. Co. v. Gutterman*, 896 F.2d 116, 118 (5th Cir. 1990). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249 (citations omitted).

A court may not make credibility determinations or weigh the evidence in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). The court is also required to view all evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Clift v. Clift*, 210 F.3d 268, 270 (5th Cir. 2000). Under this standard, a genuine issue of material fact exists if a reasonable trier of fact could render a verdict for the nonmoving party. *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008).

### III.
### LAW & APPLICATION

Under *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938), a federal court sitting in diversity jurisdiction applies the substantive law of the forum state. *Cates v. Sears, Roebuck & Co.*, 928 F.2d 679, 687 (5th Cir. 1991). Louisiana law provides that an insurance policy is a contract and that its provisions are construed using the general rules of contract interpretation in the Louisiana Civil Code. *Hanover Ins. Co. v. Superior Labor Svcs., Inc.*,

179 F.Supp.3d 656, 675 (E.D. La. 2016). "When the words of an insurance contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent and the courts must enforce the contract as written." *Sims v. Mulhearn Funeral Home, Inc.*, 956 So.2d 583, 589 (La. 2007) (citing La. Civ. Code art. 2046). Additionally, an insurer may avoid coverage on grounds of material misrepresentation only where the statements were made with intent to deceive. *Chavez v. Homesite Ins. Co.*, 834 F.Supp.2d 504, 507 (E.D. La. 2011) (citing *Cousin v. Page*, 372 So.2d 1231, 1233 (La. 1979)). Because there will rarely be direct evidence of intent, this element "must be determined from surrounding circumstances indicating the insured's knowledge of the falsity of the representations . . . and his recognition of the materiality of his misrepresentations, or from circumstances which create a reasonable assumption that the insured recognized the materiality." *Id.* at 508.

Matters relating to the creation of the invoices and plaintiff's intent in submitting them involve credibility determinations, which are beyond the court's review at this stage. Plaintiff's misrepresentation as to her employment status is also of questionable materiality. Plaintiff's misrepresentation that she had paid the tarping invoice, however, may provide sufficient grounds for voiding the policy. Plaintiff contends that there is a genuine dispute of fact on this issue and that she testified that she did not make the statements set forth in Elliott's affidavit. But plaintiff misrepresents her own testimony—she only stated that she could not recall making such a statement. *See* doc. 11, att. 3, pp. 34–36.

Plaintiff's initial representation that she had paid the tarping invoice was clearly false. The circumstances also indicate that plaintiff was aware of this falsity and of its materiality when she made the representation. She stated, contrary to fact, that she had paid thousands of dollars in cash on an expense she later admitted she had never incurred. She also made that representation in a context that would enable her to receive reimbursement for the expenditure. These statements provide sufficient grounds for voiding the policy under its plain terms.

## IV.
### CONCLUSION

For the reasons stated above, the Motion for Summary Judgment [doc. 11] will be **GRANTED**.

**THUS DONE AND SIGNED** in Chambers on this 18th day of November, 2021.

_____
**JAMES D. CAIN, JR.**
**UNITED STATES DISTRICT JUDGE**